The opinion of the Court was delivered by
Bargan, Ch.
The defendant was the -Ordinary of Barn-well District. His term of office expired on or about the 14th April, 1852, when ibis successor, the plaintiff, having been previously elected, was duly qualified, and, entered upon the discharge of the duties of his office.
*492 The plaintiff complains, that.whilst the said Thompson was in office as Ordinary, he took charge, in his official character, of various estates, as derelict, under the provisions of the Act of Assembly of 1839, and sold considerable real estate, by virtue of his office as Ordinary : and that large sums of money, both on account of said derelict estates, and on account of the sales of real estate, remained undistributed and undisposed of, in the hands of the said W. H. Thompson, at the expiration of his term of office. The plaintiff refers tó a statement of various sums so received by the said W. H. Thompson, but professes to be ignorant whether the statement is full and complete, as to all the sums received by the said W. H. Thompson, as Ordinary, during his term of office, and remaining in his hands at the termination thereof. He prays not to be concluded by the statement referred to in his bill, and to be permitted to show other amounts received by the said W. H. Thompson, of a like character, and not embraced in the said statement. The plaintiff contends that all sums of money remaining in the hands of his predecessor, the said W. H. Thompson, on account of the sale of real estate made by him, and on account of derelict estates, whereof he had charge, during his term of office ; and also all sums of money received by the said defendant, since the expiration of his term of office, ought to be paid to him, (the plaintiff,) and are of right receivable by him. The plaintiff further says, that on application to the defendant for the sums of money which have come into his hands, in the manner before stated, the said defendant has refused, &c.
The plaintiff prays for the usual process, and for an injunction against the defendant, and for a discovery and account of all sums of money which have come into his hands, as Ordinary, during his term of office, undistributed and undisposed of, whether the said sums of money have been received by him on-account of the sales of real estate, or on account of derelict estates ; and also of all sums of money which he may have received and paid over as Ordinary, since the expiration of his term of office. The plaintiff further prays, that the said de *493 fendant may be decreed to pay over to him, as' the present Ordinary, all the said several sums of money, and for general relief in the premises.
The defendant, in his answer, admits that he was the Ordinary of Barnwell District; and that he was elected and entered upon the duties of his office; and that his official term has expired, as stated in the bill. He admits, that the plaintiff is his successor; that he was duly qualified, and entered upon the discharge of his duties as Ordinary of Barnwell District. He admits, that he has sold, in many cases, real estate for partition, and received for the same large sums of money, some portions of which still remained in his hands, at the expiration of his term, and have been retained by him against the demand of the plaintiff. He admits, that he had in his charge, as Ordinary, during the continuance of his term, sundry estates as derelict; that, as to the derelict estate of William J. Pickling, and that of B. M. Ennicks, he has paid away moneys since the expiration of his term of office. As to the derelict estate of Jno. A. Bronson, he says, the assets of said estate have been collected, and all the debts paid, and proceedings are now pending in this Court against him for a distribution of the said estate, the said proceedings having been commenced against him before he retired from the said office; that, as to the derelict estate of John McDaniel, he has collected some of the assets, and paid, all the debts of a higher order, such as judgments, mortgages and bonds, and that the balance of the choses in action of the said estate have been turned over to the complainant, with the papers of the office ; but before retiring from the said office, a bill was filed against the defendant by one Barnett Ashley, the surviving partner of the said McDaniel, for an account of the said partnership, and the cause is still pending in this Court. That, as to the derelict estates of the aforesaid 'Wm. J. Fielding and B. M. Ennicks, and the derelict estates of Julia Kuhtman and T. L. Ennicks, proceedings have been had in this Court, while the defendant was acting as Ordinary, *494 and orders were made, directing him to settle and pay out the moneys .of the said estates.
The defendant bases his defence for refusing to pay over those moneys to his successor, the plaintiff, on the ground that the law did not require him to turn over those moneys to his successor, and did not authorize his successor to receive the same, and, consequently, the plaintiff could give him, for such payment and transfer of the funds, no legal discharge. The defence set up in the answer involves the legal proposition, whether the defendant, as the out-going Ordinary, was required to turn over to his successor the sums of money received by the former, in the manner before stated ; and whether the plaintiff, as his successor, was duly authorized to receive the same.
The case came to a hearing on the bill and answer before the Chancellor, who made a decree as follows :
“ It is ordered, that Wm. H. Thompson, the retiring Ordinary, do pay. to’his successor, Richard C. Fowke, the moneys remaining in his'.hands, arising from the sale of real estate.
“It isJalso ordered, that he pay to the said Richard C. Fowke the moneys remaining in his hands, in those derelict estates where the six months had not expired when the said Wm. H. Thompson retired from office.
“ It is further ordered, that the injunction be dissolved, as to those derelict estates where orders have been made by this Court.”
The injunction which the decree refers to, and dissolves in part, was an order for an injunction, granted by the Commissioner, on the usual conditions, restraining and forbidding the defendant from disposing of, or paying to any person except the plaintiff, any sum or sums of money in his hands, arising from the sale of real estate, and any sums of money in his hands belonging to any derelict estate or estates.
The plaintiff, by way of appeal from the Circuit decree, ' moves this Court to enlarge “ the said Circuit decree, so as to pass an order, compelling the retiring Ordinary, William H. *495 Thompson, to pay over and account for all the moneys of derelict estates remaining unpaid in his hands at the expiration of his office, whether orders had been made, or proceedings were pending, or whether six months had expired or not.”
The defendant was content with the decree, and has not appealed. Such is the state of the pleadings, and of the facts upon which his appeal has been heard.
No question as to the jurisdiction of the Court to entertain the cause was made on the Circuit trial, nor has any such proposition been assumed and submitted to the Court by way of appeal. It is usual to leave questions of this kind to the astuteness of parties, and they must be raised according to the established forms, and at the proper stage of the proceedings. Presented in no other way, is the' Court bgjmcLas a matter of right, to be demanded by the parties, .te^^ra^^^^tfetecide the question of jurisdiction. The Court maf^ m its í&iikeífon and on its own motion, take notice of its jurisdictM-J* The defect of jurisdiction should be glamig, and fW^@@^|urgent, which would render such a course m’ojjpjv^ ^Vhen a plrty has instituted proceedings, which overstlj^and cfri3fe||áícl Jpe great and distinguishing boundaries, which ni^|^iA?<ggparate the different branches of the judicature of the country, the Court will, and it becomes its imperative duty to, notice the objection, at any stage of the proceedings, and thus counteract the tendency to a general amalgamation of the powers of the different Courts.
I must not be understood, however, as intimating that the objection to the jurisdiction, if it had been properly pleaded, would have prevailed. On the contrary, I think that the jurisdiction of the Court, on a strict consideration of the subject, may be sustained. It is true, that the plaintiff may have preferred his complaint to a Court of Law, and, on the case made here, may have obtained a very effectual relief. The Judges of that Court are invested with all the powers of the Court of King’s Bench, in the supervision, control and restraint of all the inferior tribunals of the State. And this power may be as *496 well exercised in the restraint of those who illegally intrude themselves into the performance of official functions, as in confining such as have the legitimate official investiture within the just limits of their power and authority. It does not follow, because a Court of Law may have issued its mandamus to Wm. H. Thompson, the out-going Ordinary, to transfer all the funds which came into his possession, as Ordinary, to his successor, that his successor may not. come into this Court for a discovery and an account as to those funds. The Law Court may have been embarrassed, for the want of facilities, in taking the account, and its mandate may have been rendered nugatory, for the want of a discovery. The plaintiff’s bill, though not after the most approved form, is a bill for discovery, account and relief, and may well be sustained, upon the jurisdiction which this Court possesses over such matters.
The retiring Ordinary rests his defence for not transferring the moneys in his hands to his successor, on the broad position, that he is not bound by law to make the transfer, and that the in-coming Ordinary is not entitled to receive such moneys. He deduces his conclusion from the fact, that the Act of 1839, entitled, “An Act concerning the office and duties of Ordinary,” (11 Stat. 39;) contains no explicit provision to this effect. The 37111 section of the Act declares that “ every Ordinary shall be responsible for the books, papers, and also for the furniture in his office; and upon his retiring from office, or his death, he, or his representatives, shall be bound to transfer all such books, papers and furniture to his successor, immediately after such successor shall have entered upon the duties of his office, under a penalty of one thousand dollars, to be recovered by indictment, and of imprisonment, not exceeding one year.” The absence of any specific requisition in this, and the other clauses of the Act, that the retiring Ordinary shall transfer moneys received during his term, in his official capacity, to his successor, serves as the ground of that construction, by which the defendant felt himself authorized to detain such moneys, in opposition to the right and the demand of his successor. It is obvious that this *497 construction is a negation of the right of the incoming Ordinary to receive from his predecessor, not only the moneys of derelict estates remaining in his hands, under all circumstances, hut also moneys in his hands arising from the sale of real estate; in regard to which the defendant has submitted, without appeal, to the decree that he should pay over; and in opposition to which not one specious reason can be urged. The length to which such a construction leads, very naturally creates a suspicion of its unsoundness. It is the opinion of this Court, that, upon a fair and proper interpretation of the Act, considered in all its provisions, and in reference to the objects the Legislature had in view, the implication arises, that the out-going Ordinary was bound to turn over to his successor, as well the moneys in his possession, as the books, papers and furniture. There is certainly nothing expressed to the contrary, nor is a negation of such a construction to be implied.
The question was presented to this Court, in the argument at the bar, as if the obligation of the retiring Ordinary to turn over to his successor the books, papers, furniture and money in his possession, had its origin in, and depended upon, the provisions of the Act of 1839. It would be a great fallacy to consider and decide the question upon such a narrow view of the subject. The Act of 1839 did not establish the office of Ordinary, but was intended to regulate in a more perfect manner its powers and responsibilities, to consolidate the scattered and pre-existing statutory provisions into a more intelligible system, and to create some additional guarantees, for the performance of its high and important trusts. Thus, the Act of 1839 provides, in express terms, that the retiring Ordinary shall deliver over to his successor the books, papers and furniture in his possession, appertaining to the office, under certain specified penalties. Those penalties were then for the first time declared, but who can doubt that the obligation to transfer books, papers and furniture was anterior to that Act. How is it possible, from the very nature and constitution of the office, for it to be otherwise, than that the incumbent, who is the legal custodian of the books, papers *498 and furniture of his office, who is responsible for their safe keeping, and who is daily required to perform responsible duties connected with them, should not have them in his possession? The same principle applies to all offices,'and to all subject matter of which the officer, as such, is to have the charge, in connection with which he is to perform the duties, and for which the law makes him responsible.
This view of the subject applies with equal propriety to moneys and other things that have come into the hands of the Ordinary, virtute officii, as it does to books, papers and furniture. It may be that the omission of all mention of money in connection with books, papers and furniture, in the 37th section of the Act, if a casiis omissus as to the penalties imposed by the Act. But the obligation of the retiring Ordinary to transfer to his successor moneys and every thing else which have come into his possession, in his official character, majr well be made to rest on the nature of the office, the duties to be performed, the obligations incurred by the incumbent, and the great principles of fitness and expediency. It is not fit or expedient that the duties of this office should be partitioned among several persons at the same time; or that the out-going Ordinary, in retiring from office, should withdraw with him, as attached to his personal character, some portion of the duties, and some portion of the subject matter concerning which those duties are to be performed. There is an unity in regard to the incumbency of the office contemplated by all the provisions of the law, as to its duties and trusts, which forbids any such conclusion. The inference to my mind seems to be inevitable, that whatever has come into the possession of an Ordinary, as such, and in his official capacity, cannot attach to him in his personal character, and must, at the expiration of his term, be transferred to his successor.
And the duties of the office are to be performed by but one incumbent for the time being. This must be the great rule, to which there may be some exceptions, called for by particular emergencies — as, for 'example, when the Ordinary himself de *499 sires to become executor or administrator, it is provided that he may qualify before the Clerk of the Court of the same District, who, pro hac vice, becomes the Ordinary.
This brings me, in a natural order, to the consideration of that branch of-the discussion which has arisen under the 7th section of the Act of 1839, which is in the following words :
“ In case any estate shall be left derelict, either from partial administration by an executor or administrator, or by reason of no application for letters of administration or letters testamentary, or otherwise, the Ordinary of the District, who might be entitled to grant such letters, shall collect and take charge of the same, for the period of six months, after which time, if administration be not sooner applied for, he shall sell the same, after due public notice, either for cash, or upon a credit of six months; and, after payment of the debts of said deceased, shall deposite in the Bank of the State of South-Carolina, or in some one of its branches, the net proceeds, to the account of the estate to which it belongs, and shall file in the office of the Clerk of Common Pleas, of his District, a certificate of such deposite; and, to the end that he may- so collect such estate and effects, he shall have power to institute and maintain all necessary legal proceedings. And, for the services aforesaid, he shall be entitled to five per cent, of the value of the estate.”
It has been contended, that when an Ordinary for the time being, administers upon a derelict estate, under this provision of the Act, he is not bound to transfer to his successor, at the expiration of his term, the money remaining in his hands, appertaining to such derelict estates. It is further contended, that if bound to transfer the moneys in his hands belonging to derelict estates, where such estates had not been in his hands for six months previous to the expiration of his term, yet that he was not bound to transfer the moneys in his hands belonging to derelict estates, in cases where such estates had been in his possession for more than six months previous to the expiration of his term, nor in those cases of derelict estates in which orders *500 had been made by the Court of Equity, and in which proceedings are now pending.
The Chancellor who rendered the Circuit decree overruled the first proposition, and ostensibly sustained the two last, as exceptions. But the Chancellor was informed at the hearing, (as conceded by counsel here,) that in all derelict estates remaining in the hands of the retiring Ordinary, of more than.six months standing, either none of the prescribed acts of administration were unperformed, except the deposite in bank of the net balance, after the payment of debts, or bills had been filed by the distributees in the Court of Equity, against the Ordinary. And he meant to hold that the incumbent was not entitled to the transfer of moneys, where the ministerial act of making the deposite had alone remained, or the Court of Equity had then taken cognizance. He employed the term “ six months ” as a brief description, sufficient in the supposed facts, where some act of administration beyond making the deposite remained to be done.
Thus the Chancellor held, that where the retiring Ordinary had not been in the possession of the derelict estates for six months previous to the expiration of his term, he was bound to turn over to his successor the moneys remaining in his hands belonging to such derelict estates ; but that he was not so bounds where the derelict estate had been in his hands for more than six months previous to the expiration of his term, and nothing remained to be done but to make the deposite ; nor in any case of derelict estate, where orders of any kind have been made by the Court of Equity in reference to it, and in which proceedings were pending.
I am unable to discriminate as the Chancellor has done. If, in reference to those derelict estates which had been in the hands of the defendant for more than six months before the expiration of his term, he had complied with the requirements of law, had deposited the money in the Bank of the State of South-Carolina, or some one of its branches, had taken a cer *501 tificate of deposite, and had filed the certificate in the office of the Clerk of the Common Pleas of his District, I should have no hesitation in saying that the duty of the Ordinary, in reference to that fund, was complete and discharged, and that the in-coming Ordinary would havé, of right, no power or control over it. It would be as much beyond the reach of the officer who made the deposite, as of his successor. It would have to remain on deposite until some Court of competent jurisdiction, at the instance of the parties interested, should order its removal or distribution.
But that is not the case we are considering. This defendant, in reference to some of these derelict estates in his hands, though he has collected the assets, and though more than six months have expired after said estates have come into his possession, in contumacy of the law, has made no deposite in any Bank. And it was admitted by his counsel,'that he had made no de-posite in Bank, on account of derelict estates, during his whole term of office. And the question is, whether he shall be permitted to retain, after the expiration of his term, the funds of derelict estates, which he has thus held over against the requirements of the law. Is he to be permitted to retain them, because he has not done his duty, and has failed to make the deposite ? Is his non-feasance to place him in a better condition than if he had properly discharged his trusts? As the moneys has not been deposited in Bank, where the law intended it to go, the next best and safest place of keeping is, the possession of the Ordinary for the time being.
What I have said in the preceding párt of this opinion, and the conclusions at which I have arrived, leave me but little to add on this branch of the subject. My conclusion was, that all books, papers, furniture, moneys, and everything else, which have come into the hands of an Ordinary virtute officii, and which remain in his hands at the expiration of his term, go over to his successor as a matter of course, unless there be some special provision of law to the contrary, constituting an exception.
Do derelict estates, under the 7th section of the Act of 18393 *502 pass into the hands of the Ordinary in his official character ? It is the Ordinary of the district, who may be entitled to grant letters of administration, or letters testamentary, on such derelict estates, who is required to take charge of them. Surely, where the officer is invested with a power, or subjected to a duty or responsibility, in his official name, the power and the duty attach to him in his official, and not in his personal character. It means, the incumbent for the time being, shall do this or that, and be subject thus and so. There can scarcely be a difference of opinion on the construction of the Act of 1839 in this particular. It plainly means, that the Ordinary for the time being, and as such, shall take charge of derelict estates, and that he shall administer them in his official character.
It remains to be seen, whether a distinction can be drawn in favor of the defendant, in reference to those derelict estates where orders have been made by the Court of Equity, and in which proceedings are pending. This distinction, if sustained, would embrace all cases where orders have been made, though it may have been merely a preliminary order; and perhaps all cases where proceedings were pending and orders made, though the retiring Ordinary hád not been in possession six moths. I do not think that the distinction is warranted by any sound construction of the Act. If proceedings be instituted against the Ordinary for the time being, and during the pendency of the proceedings, his term of office expires, I perceive no reason why this should be an exception to the general rule, that he should transfer all the funds in his hands, as Ordinary, to his successor. If he be required by law to pay, and does, in fact, pay to his successor, his plea to that effect would discharge him. The new Ordinary might, and ought to, be made a party by supplemental bill, and it might be necessary and proper to retain the bill against both. There could be no difficulty or injury to any. The case bears a strong analogy to one, where an executor or administrator has died, and letters of administration, de bonis non, have been sued out. The parties interested in the estate might proceed for account against the administrator de bonis *503 non, and at the same time against the legal representatives of the first executor or administrator. And this, in the case supposed, would be the proper course.
Some difficulty has been felt, in reference to cases of derelict estates, in which the retiring Ordinary, on proceedings against him, during his term, has been ordered to pay out a particular sum of money to particular individuals. And it is said (though the fact does not appear in the.-brief) that such is the predicament of the defendant as to one or more of the derelict estates in his hands — the funds of which he is holding over. This fact is apt for my argument. For it is also stated, that the persons, in whose favor such orders for payment have been made, are absent, and have long been absent, from the State — are ignorant of their rights — and their places of residence, and even whether they be living of dead, unknown. Is the retiring Ordinary to hold in his hands, as a private person, and for an indefinite period, the funds of these absent, and perhaps deceased'persons ? It is not assuming much to say, that such funds would be safer in the keeping of a responsible officer, than in that of a private person; besides, it would be the duty of the new Ordinary to make a deposite in the Bank forthwith, on receiving the funds.
There can be no difficulty in the fact, that the defendant, Thompson, has been ordered to pay money to particular individuals ; for, if his successor is entitled to receive from him money so ordered to be paid out, the receipt of his successor will operate as a discharge from the claim of the person to whom payment was ordered to be made. Such claimant would, in the event of a receipt by the new Ordinary, have to look to him, and to hold him responsible for any mis-application of his funds.
The Circuit decree must be modified and enlarged.
It is ordered and decreed, that the defendant, W. H. Thompson, late Ordinary of Barnwell district, do account for, and pay over, to his successor in office, R. C. Fowke, all moneys remaining in his hands as Ordinary, and not lawfully appropriated or disposed of at the expiration of his term of office, whether said *504 moneys were derived from derelict estates, taken charge of by the said defendant, during his official term — from the sales of real estate — or from any other source whatsoever.
It is further ordered and decreed, that the defendant pay the costs.
DüNKin, Ch., and O’Neall, Wardlaw, and Frost, JJ, concurred.